UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 1:25-cr-00141-TNM-2 |
| v. | |
| **CRISTIAN MONTECINO SANZANA,** | |
| Defendant. | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION FOR DEFENDANT CRISTIAN MONTECINO SANZANA

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that the defendant, Cristian Montecino Sanzana, be detained pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A) (serious risk of flight) of the federal bail statute.  On April 12, 2025, Montecino Sanzana and his co-defendant, Mario Bustamante Leiva, committed a robbery in the District of Columbia.  Specifically, Montecino Sanzana and his co-defendant entered a restaurant and targeted a patron with a handbag.  Bustamante Leiva then approached the patron and stealthily took their handbag. Using his coat to conceal the stolen bag, Bustamante Leiva and Montecino Sanzana left the restaurant.  Following the robbery, Montecino Sanzana and Bustamante Leiva made fraudulent purchases using the credit card obtained from the victim of the robbery.  Bustamante Leiva committed two additional robberies on April 17, 2025, and April 20, 2025, that followed the same pattern.  Those robberies are detailed further in the Government's memorandum submitted in support of his pretrial detention.  ECF No. 9.

When Montecino Sanzana was indicted in connection with this case, he had a pending case in Florida state court for possession of a stolen driver's license.  Montecino Sanzana also has an

1

outstanding warrant in Chile, that was issued in 2019, for the offense of misappropriation. In addition, in 1998, Montecino Sanzana was convicted in Chile of fraud, theft, and forgery of public documents. Montecino Sanzana has also been arrested several times in Chile, for robbery in 1991, fraudulent use of bank checks in 1995, and fraud in 2006. Finally, Montecino Sanzana lacks any ties to the District of Columbia, and several days after the April 12, 2025 offense, he left the jurisdiction and traveled to Miami Beach, Florida.

Montecino Sanzana's actions and criminal history demonstrate that he continues to present a serious risk of flight if released. Considering the factors specified under 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure his appearance in court. Accordingly, the Court should detain Montecino Sanzana pending trial.

## BACKGROUND

### *The Instant Offense*

#### The April 12, 2025, Robbery (CCN 25-053341)

On Saturday, April 12, 2025, at approximately 8:30 PM, Victim-2 reported to MPD that her purse had been taken from the back of her chair while she was dining at the Nando's restaurant located at 836 F Street NW, Washington, D.C. Law enforcement recovered surveillance video from the Nando's that captured Montecino Sanzana and Bustamante Leiva working in concert to stealthily remove Victim-2's purse from the back of her chair and exit the Nando's. Victim-2 provided law enforcement with transaction records from her credit/debit cards that were stolen with her purse. Those records indicated that an unauthorized transaction had been made using one of Victim-2's cards and that an attempted transaction was made on a second card that was declined.

Surveillance video from the Nando's exterior captured Bustamante Leiva and Montecino Sanzana as they walked past the establishment at approximately 8:30 PM and paused outside for

several seconds while they appeared to look through the front window. Montecino Sanzana entered the Nando's while Bustamante Leiva removed his jacked and draped it over his left arm. Bustamante Leiva's placement of his jacket was similar to how he carried a jacket during the April 17th robbery. *See* ECF No. 9 at 4. Additionally, the jacket worn by Bustamante Leiva appeared to be the same jacket he wore during the April 17th and the April 20th robberies. *See* ECF No. 9 at 23-27.



**Figure 1 - BUSTAMANTE LEIVA (circled in red) and MONTECINO SANZANA (circled in yellow) outside the Nando's on April 12, 2025.**

Once inside the Nando's, Montecino Sanzana and Bustamante Leiva approached the table where Victim-2 was seated and stood nearby. Montecino Sanzana appeared to position himself to block the back of Victim-2's chair from view. Bustamante Leiva continued to move closer to Victim-2 and grabbed Victim-2's purse while simultaneously using his jacket to conceal the purse. Bustamante Leiva and Montecino Sanzana then departed the Nando's.



**Figure 2 – BUSTAMANTE LEIVA (right) and MONTECINO SANZANA (left) enter the Nando's at approximately 7:31 PM. MONTECINO SANZANA appears to block the view of the back of Victim-2's chair while BUSTAMANTE LEIVA grabs Victim-2's purse with his left hand hides it under his coat.**

After leaving the Nando's, Bustamante Leiva and Montecino Sanzana traveled to the Safeway at 490 L Street NW. Surveillance video captured Bustamante Leiva and Montecino Sanzana entering the Safeway at approximately 8:04 PM. Montecino Sanzana proceeded to purchase a $500 Visa gift card ending in 9034 using Victim-2's credit card, which Bustamante Leiva had stolen approximately a half-hour prior.



**Figure 3 – MONTECINO SANZANA using Victim-2's credit card to complete the gift card purchase at Safeway.**

Surveillance video captured Bustamante Leiva departing the Safeway at approximately 8:11 PM. Montecino Sanzana exited the Safeway a few minutes after Bustamante Leiva. The activation of and transactions on the Visa gift card are processed by InComm Payments. All activations and transactions on InComm products are processed and authorized from InComm's servers in Atlanta, Georgia.



**Figure 4 – MONTECINO SANZANA and BUSTAMANTE LEIVA entering the Safeway on April 12, 2025, at approximately 8:04 PM.**

Officer Pearlman received transaction records for the Visa gift card, which revealed a phone number used to check the balance of the gift card. The records also documented approximately $462 worth of charges between April 12, 2025, and April 16, 2025. These records and the investigation were shared with the Secret Service, who were investigating the April 20 robbery at Capital Burger. During a review of these transaction records, law enforcement observed an April 12th transaction for a hotel stay at the Motel 6 located at 6711 Georgia Avenue NW, Washington, D.C., an April 14th transaction for a hotel stay at Quality Inn located at 7212 Richmond Highway, Alexandria, VA, and finally, an April 15th transaction at a 7-Eleven located

at 3100 Lockheed Boulevard, Alexandria, VA. Additionally, numerous charges were made at the King Street metro station in Alexandria, VA.

Officer Pearlman contacted Metro Transit Police Department (MTPD) investigators, who flagged SmarTrip cards the suspects added money to using the fraudulently purchased gift card. MTPD provided clear images of Bustamante Leiva and Montecino Sanzana, both without face masks, on April 15 at the King Street metro station. These images are from surveillance video that captured Bustamante Leiva and Montecino Sanzana after they used the Visa gift card that was purchased using Victim-2's stolen credit card. In one of the images provided by MTPD, Bustamante Leiva is carrying a black jacket with a white collar that appears to identical to the jacket he wore during the April 12th, April 17th, and April 20th offenses.



**Figure 5 – MONTECINO SANZANA (left) and BUSTAMANTE LEIVA (right) at the King Street metro station on April 15, 2025.**

6

MTPD also provided MPD personnel with Bustamante Leiva's last movements related to the flagged SmarTrip card on April 21, 2025. The transactions showed Bustamante Leiva enter the Dupont Circle metro station at approximately 03:26 PM and exit at Silver Spring metro station approximately 30 minutes later. In video from the Silver Spring station, Bustamante Leiva is wearing a Navy collared shirt and camouflage sneakers. The camouflage sneakers appear to match the sneakers that Bustamante Leiva was wearing during the April 17th offense at the Westin.



**Figure 6 - BUSTAMANTE LEIVA at the Silver Spring metro station on April 21, 2025.**

MPD Personnel and members of the United States Secret Service conducted follow up canvases at the locations linked to the Visa gift card transactions. With respect to the Motel 6 transaction, law enforcement received information from the Motel 6 reservation and payment system. Between April 12, 2025, and April 14, 2025, Montecino Sanzana used the $500 Visa gift card ending in 9034 to pay for a room through a Booking.com reservation (Confirmation #

7

4063AKL383). Montecino Sanzana provided his name for this reservation. Investigators also determined a phone number associated with Montecino Sanzana was used to book the room at the Motel 6. The phone number Montecino Sanzana used to book the room at the Motel 6 was also used to check the balance on the gift-card Montecino Sanzana purchased at Safeway using Victim-2's stolen credit card.[1] No camera footage of the Motel 6 stay was available. Officer Pearlman also conducted a law enforcement database search which revealed a recent pawn transaction conducted by Montecino Sanzana in Maryland. The pawn search and follow-up provided a NYC Identification card and phone number for Montecino Sanzana, the latter of which is different than the phone number associated with the Booking.com reservation.

Later the same evening, law enforcement received information from Quality Inn as to the particular details of the transactions involving the Visa gift card between April 14, 2025, and April 16, 2025. As part of the booking and check-in process at the Quality Inn, the customer was required to provide identifying information. At the time of booking, Montecino Sanzana again provided the same name that he provided to the Motel 6. Quality Inn front desk staff reported to law enforcement that Bustamante Leiva and Montecino Sanzana were together at the time of check in. When Montecino Sanzana checked in at the Quality Inn, he was required to provide a payment method and identification document. Montecino Sanzana provided the fraudulently obtained Visa gift card for payment and a counterfeit California ID card in his name, the former being recovered during a later search of Bustamante Leiva's hotel room that he was occupying at the time of his April 26th arrest.

---

[1] On April 25, 2025, law enforcement obtained a warrant for location information associated with the phone number associated with the Motel-6 booking in an effort to locate Montecino Sanzana and Bustamante Leiva. Law enforcement subsequently determined that Montecino Sanzana was in Miami Beach, Florida, where he was arrested by law enforcement in connection with an open immigration detainer on April 27, 2025.



**Figure 7 – The gift card ending in 9034 and the counterfeit California ID.**

Law enforcement obtained surveillance footage from the Quality Inn depicting Bustamante Leiva inside the lobby, and an individual consistent in appearance with Montecino Sanzana walking with Bustamante Leiva outside of the hotel. MPD and Secret Service personnel also spoke with Quality Inn staff who interacted with Bustamante Leiva during his stay. Specifically, the Quality Inn staff recalled an incident during which Bustamante Leiva engaged in a verbal altercation with a shift manager over his refusal to return to his assigned room (Room 231) after being asked to do so on account of being intoxicated. The staff member that was interviewed did not recall the exact time Bustamante Leiva checked out but did recall that Bustamante Leiva left behind a black Samsung A12 cellphone that was recovered by Quality Inn staff. The Secret Service recovered the cellphone as evidence.

MPD personnel also retrieved surveillance video of the April 15th transaction at the 7-Eleven located at 3100 Lockheed Boulevard, Alexandria, VA. This 7-Eleven, and the Quality Inn where Montecino Sanzana and Bustamante Leiva stayed, are located approximately 600 feet apart. Law enforcement determined that the Visa gift card, that had been purchased using Victim-2's stolen credit card, had been used at approximately 6:30 PM on April 15, 2025. Surveillance video from the 7-Eleven captured Montecino Sanzana and Bustamante Leiva enter the store at approximately 6:30 PM. In that video, Bustamante Leiva is wearing what appears to be the same black coat with a white collar and the camouflage sneakers that he wore during the April 17th robbery at the Westin.

Finally, law enforcement is actively investigating an additional robbery Bustamante Leiva and Montecino Sanzana were likely involved in that occurred at the Washington, D.C. Hard Rock Café on or about April 15, 2025. That robbery followed a similar modus operandi as the April 12, 2025 incident.

### Identification of Bustamante Leiva

On April 26, 2025, U.S. Secret Service investigators learned about report 250016968 from the Montgomery County Police Department (MCPD) in Silver Spring, Maryland, in which Bustamante Leiva identified himself to law enforcement and reported that he was the victim of a theft. Specifically, on April 19, 2025, at 02:23 AM, MCPD officers responded to 8240 Fenton Street, Silver Spring, MD for a theft. Once on scene, officers met with Mario Bustamante Leiva who, through a Spanish interpreting officer, advised the following: Around 02:00 AM, Bustamante Leiva, who has no fixed address and is currently unhoused, fell asleep on a bench in front of the above referenced address around 02:00 AM. When Bustamante Leiva woke up, his bag containing all of his belongings was gone. Bustamante Leiva advised that in the bag were several pieces of

clothing including shoes, his Chilean passport, and over $1,000 in cash. Bustamante Leiva was somewhat uncooperative and smelled heavily of an alcoholic beverage.

### Bustamante Leiva's Arrest on April 26, 2025

From the date of Bustamante Leiva's purchase of an Amex gift card using a credit card stolen in the April 17, 2025 robbery, Officer Pearlman periodically checked, through the gift card payment provider, for activity on the card. The payment provider's fraud investigators also monitored the card for activity after hours and over the weekend. On April 26, 2025, a fraud investigator checked the Amex gift card's transactions and alerted Officer Pearlman and Detective Gargac that the Amex gift card had been activated and was using a phone number ending in 5732. The fraud investigator further advised that the gift card had been used to make a purchase at the Motel 6 located at 6711 Georgia Ave NW, Washington, D.C., on April 26, 2025, at approximately 10:24 AM. Officer Pearlman notified members of the United States Secret Service, who determined that the phone number used to activate the gift card was a T-Mobile number. Using commercial databases, law enforcement determined that the phone number is registered to "Mari Buscamante."

Additionally, law enforcement was aware that Bustamante Leiva and Suspect-2 had previously stayed at this location on April 12th and April 13th using the gift card purchased with the funds from Victim-1's stolen credit card. Investigators responded to the Motel 6 and queried the reservation system for the last four digits of the Amex gift card number ending in 3742. The second result on the list showed a reservation starting on April 21 and extending through April 27. The name provided for this reservation was Mario Bustamante with a room number of 311. The reservation revealed Bustamante Leiva likely used a photocopy of a Chilean passport in the name of "Mario Enrique Bustamante Leiva" as an identification document. Surveillance footage of the

11

check in on April 21, 2025, was also reviewed, and investigators recognized Bustamante Leiva by face and clothing.

Investigators knocked on the door of Room 311 and Bustamante Leiva answered the door. USSS and MPD personnel recognized Bustamante Leiva as the suspect in the BOLOs prepared by MPD and USSS in connection with the April 12th, 17th and 20th incidents. MPD personnel then placed Bustamante Leiva under arrest and escorted him to the lobby of the hotel. USSS and MPD personnel secured the scene and continue to hold Room 311 secure until investigators secured a search warrant. Bustamante Leiva was transported to the Hospital after complaining of alcohol withdrawal. Once cleared from the hospital, Bustamante Leiva was transported to the US Secret Service's Washington Field Office where he was interviewed by MPD and USSS personnel.

### Interview of Bustamante Leiva

Bustamante Leiva was interviewed by Officer Pearlman, Detective Gargac, and USSS Special Agent May. Bustamante Leiva is primarily Spanish-speaking, thus Detective Benjamin was present to act as a translator. The interview was video and audio recorded. What follows is a short summary of the interview. Bustamante Leiva was advised of his Miranda rights and subsequently waived them. Bustamante Leiva was first shown a body-worn camera (BWC) photograph of himself from the April 19, 2025, report he made about being the victim of a theft. Bustamante Leiva identified himself and advised that five black males had robbed him while he slept on the bench. Bustamante Leiva was wearing what appeared to be the same black coat with white fur in the BWC photograph he was shown that he was observed wearing on surveillance video during the offenses under investigation.

Bustamante Leiva stated that he was an alcoholic and therefore that he has memory issues. During the interview Bustamante Leiva admitted to stealing Victim-3's purse/bag (the

victim of the April 20, 2025 robbery). He stated that the purse/bag was underneath Victim-3's chair and that he used his feet to slide it out from underneath the chair. Bustamante Leiva then picked up the purse/bag and fled. Bustamante Leiva advised that he kept the purse and wallet that was inside of it. The rest of the contents he threw in the trash. Bustamante Leiva claimed that he still had the purse and that it was in the Motel room. Bustamante Leiva verified that he had the shoes and coat that were worn during the offenses inside the hotel room. Bustamante Leiva was shown a photograph of Victim-3 and denied any prior knowledge of who they were. Bustamante Leiva had a good recollection of this offense but stated he could not remember the other offenses he committed.

Bustamante Leiva was shown video stills from the April 12th and April 17th offenses. He identified himself in the video stills. Bustamante Leiva was also shown a news story form a British publication detailing his arrest in 2014 for a series of thefts that occurred in London, England. The story detailed that Bustamante Leiva had been arrested in London for stealing designer bags and purses. The article included a photograph of Bustamante Leiva. Bustamante Leiva was shown this photograph and he verified that it was him.

Bustamante Leiva was also questioned about Montecino Sanzana. Bustamante Leiva stated that he had recently met Montecino Sanzana days prior in Washington, D.C. Bustamante Leiva disclosed that he and Montecino Sanzana had rented motel rooms together to save money. Bustamante Leiva was shown photographs of Montecino Sanzana and verified them as such. Bustamante Leiva repeatedly stated that the gift cards he used were provided by Montecino

Sanzana. Bustamante Leiva advised that the Amex gift card used on the morning of April 26, 2025, that led to his arrest, was not his.

### Search Warrant Execution

On April 27, 2025, at approximately 12:28 AM, members of the USSS along with Officer Pearlman and Detective Gargac executed a D.C. Superior Court Search Warrant at 6711 Georgia Ave NW, Room 311.  Law enforcement recovered from Room 311 Victim-3's purse and wallet, an Amex gift card ending in 3742, a Black Jacket with a white fur collar, a pair of Nike camouflage sneakers, a business card belonging to the manager of the Quality Inn in Alexandria, VA, approximately $3,174.35 in United States currency and a five Euro note, and a WMATA SmarTrip card.  The jacket and Nike and sneakers that were recovered from Room 311 appeared to match the jacket and sneakers worn by Bustamante Leiva during the robberies on April 17th and April 20th. The recovered SmarTrip card was confirmed to be the same SmarTrip card referenced earlier in this affidavit and that was flagged by MTPD as belonging to BUSTAMANTE LEIVA.

### *Procedural History*

On April 28, 2025, a Criminal Complaint charging Bustamante Leiva with violations of 18 U.S.C § 1343 (Wire Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), and 22 D.C. Code § 2801 (Robbery) was signed by the Honorable Moxila A. Upadhyaya of the United States District Court for the District of Columbia.  An initial appearance was held before Magistrate Judge Upadhyaya on April 28, 2025.  At that hearing, the Government moved for detention pursuant to 18 U.S.C. § 3142(f)(2)(A).  Following a detention hearing before the Honorable Matthew J.

Sharbaugh, Bustamante Leiva was ordered detained pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A).

On May 15, 2025, a Grand Jury returned a nine-count indictment against Bustamante Leiva and Montecino Sanzana. The indictment charged Montecino Sanzana with one count of Wire Fraud in violation 18 U.S.C. §§ 1342, 2, one count of Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A(a)(1), 2, and one count of D.C. Code Robbery in violation of 22 D.C. Code § 2801. On June 18, 2025, Montecino Sanzana appeared before Magistrate Judge Upadhyaya for his initial appearance. At that hearing, the Government moved for detention pursuant to 18 U.S.C. § 3142(f)(2)(A).

## **ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).

In determining whether an individual is a flight risk, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g); *see also United States v. Vasquez-Benitez*, 919 F.3d 546, 551-51 (D.C. Cir. 2019). "A determination that an individual is a flight risk must be supported by a preponderance of the evidence. *Vasquez-Benitiz*, 919 F.3d at 551.

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."

15

18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and *Williams*, 798 F. Supp. at 36.

Here, if released, Montecino Sanzana poses a flight risk. He has no ties to the District of Columbia and left the jurisdiction to travel to Florida sometime after April 16, 2025. Montecino Sanzana was subsequently detained by law enforcement in Florida, where he provided Miami Beach police with a fake identification document and was charged with possession of a stolen driver's license. Montecino Sanzana now has a pending criminal case in Florida state court and has an outstanding arrest warrant in Chile for misappropriation.

**I.      The Nature and Circumstances of this Offense Merits Detention.**

Here, Montecino Sanzana is charged with participating in a robbery on April 12, 2025, after which he, and his co-defendant, made fraudulent purchases using the credit cards obtained from the victim of the robbery. Law enforcement is also investigating a robbery that occurred on April 15, 2025, that Bustamante Leiva and Montecino Sanzana are believed to have committed together. Following the April 15, 2025 robbery, Montecino Sanzana and Bustamante Leiva appear to have followed the same modus operandi, making fraudulent purchases using the credit cards obtained from the victim of the robbery. Although Montecino Sanzana is charged with a non-

violent offense, the offense occurred in a crowded public space during the evening. And reflecting the seriousness of the charged offense is the two-year mandatory minimum term of incarceration the defendant would face if convicted of Aggravated Identity Theft. Therefore, the first factor favors detention.

## II.     The Weight of the Evidence Against Montecino Sanzana Favors Detention.

The second factor to be considered, the weight of the evidence, also favors detention. The Government's case against Montecino Sanzana is strong. Montecino Sanzana is linked to the charged offenses by surveillance video that captures the robbery as well as Montecino Sanzana's use of the victims' credit cards with his co-defendant to purchase a gift card. Montecino Sanzana's and Bustamante Leiva's subsequent use of that fraudulently purchased gift card is also captured on surveillance video and documented in financial transaction records.

Here, the weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and

important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. So it is in this case, the weight and strength of the evidence increases the prospect that Montecino Sanzana will flee if released. Accordingly, the second factor favors detention.

### III. Montecino Sanzana's History and Characteristics also Favor Detention.

The third factor—the history and characteristics of the defendant—favors detention, as Montecino Sanzana has a history of committing theft-related offenses in addition to an outstanding arrest warrant.

In 1998, Montecino Sanzana was convicted of fraud, theft, and forgery of public documents in Chile. *See* Exhibit A. In 2003 Montecino Sanzana was convicted of traffic violations in Chile. *See* Exhibit A. Montecino Sanzana has also been previously arrested in Chile. In 1991 he was arrested for robbery, in 1995 he was arrested for fraudulent use of bank checks, and in 2006 he was arrested for fraud. *See* Exhibit A. Montecino Sanzana also has an outstanding arrest warrant in Chile, issued in 2019, for the offense of misappropriation. *See* Exhibit A.

In addition to the charges he faces here in the District of Columbia, Montecino Sanzana has a pending criminal case in Florida state court. Montecino Sanzana was charged on May 31, 2025, with possession of a stolen driver's license in connection with the fraudulent driver's license he gave to law enforcement when he was detained in connection with an outstanding immigration detainer.

Despite previous criminal convictions, Montecino Sanzana has continued his pattern of criminal behavior. And Montecino Sanzana's history and characteristics are distinguishable from

18

circumstances in which the D.C. Circuit has held that a defendant was not a flight risk. Montecino Sanzana has no ties to the District of Columbia, his family does not live in the area, he is not employed in the District of Columbia, and he does not have residence here. *See Vasquez-Benitez*, 919 F.3d at 551 (defendant not a flight risk where he had a wife, two children and a job in the D.C. area, had one prior conviction that was 15 years old, had previously appeared for prior court proceedings, and needed to not flee in order to obtain withholding of removal in his immigration case); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996) (defendant not a flight risk where defendant faced non-violent charge, had no criminal record or record of failure to appear, was employed and had ties to the community, including a proposed third-party custodian).

Accordingly, the third factor weighs in favor of continued detention. *See United States v. Munchel*, 991 F.3d 1273, 1281 (D.C. Cir. 2021) (concluding that courts can and should "consider whether it believes the defendant will actually abide by its conditions when making the release determination"); *see, e.g., United States v. Glasgow*, No. 1:20-cr-27-7 (KBJ), 2021 U.S. Dist. LEXIS 109972, at *37 (D.D.C. June 11, 2021) ("Because Glasgow has previously disobeyed a court-ordered condition of pre-trial supervision, the Court has little faith that he would not do so again if released pending trial.").

### IV. Montecino Sanzana Presents a Danger to Our Community.

Montecino Sanzana presents a danger to the community and a flight risk. The facts of this case, along with his history and characteristics, make clear that if released, Montecino Sanzana will continue to engage in the pattern of criminal conduct with which he has been charged. And while these are nonviolent offenses, these are not victimless crimes. The charged robbery impacted the victim's sense of safety and security while Montecino Sanzana and Bustamante Leiva profited from their loss. Moreover, the instant offense is just the most recent in a criminal history that

spans continents and dates back decades. And despite prior convictions for similar criminal conduct, the defendant's criminal activity has not abated.

Similarly, if released, Montecino Sanzana is likely to flee the jurisdiction. Unlike many defendants who come before this Court, Montecino Sanzana has no ties to the District of Columbia or the surrounding area. His family does not reside here, and he does not have a permanent address in the area. Therefore, Montecino Sanzana cannot be released to a third-party custodian who could assure his presence at future court proceedings. Further underscoring Montecino Sanzana's risk of flight is his travel to Florida sometime after April 16, 2025. This is evidence of Montecino Sanzana's ability and willingness to flee the jurisdiction if released. Finally, the fact that Montecino Sanzana has a pending warrant for his arrest in Chile from 2019, further suggests that he may flee the jurisdiction if released.

Accordingly, there is no condition or combination of conditions that would reasonably assure that Montecino Sanzana would return to court if he were released.

## CONCLUSION

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ Benjamin Helfand*
Benjamin Helfand
D.C. Bar No. 1658708
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
E-mail: Benjamin.Helfand@usdoj.gov
Telephone: 202-252-7059