UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CRISTIAN MONTECINO-SANZANA,<br><br>Defendant. | Case No. 25-cr-141-2 (TNM) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

On April 12, 2025, the Defendant, Cristian Montecino-Sanzana, working in concert with his co-defendant, Mario Bustamante Leiva, robbed a District of Columbia diner of her personal belongings and used her credit cards to make fraudulent purposes. This was a targeted offense designed to maximize both defendants' financial gain while minimizing their likelihood of being caught. And Defendant Montecino-Sanzana's criminal history establishes that a sentence of imprisonment is warranted. The Defendant is now before the Court having pled guilty to one count of Wire Fraud in violation of 18 U.S.C. § 3121(a)(1)(B)(i) and one count of Attempt Robbery in violation of 22 D.C. Code §§ 2801, 2802. For the following reasons, the Government respectfully requests that the Court impose a sentence of 24 months imprisonment to be followed by three years of supervised release. Specifically, the Government requests that the Court impose a sentence of 6 months' imprisonment on Count 1 and 24 months' imprisonment on Count 2, with those sentences to run concurrently to one another.

**BACKGROUND**

I.  **Factual Background**

Between April 12, 2025, and April 15, 2025, Mario Bustamante Leiva and his co-defendant, Cristian Montecino-Sanzana, worked in concert to target unsuspecting diners at

1

restaurants in the District of Columbia. The goal of their scheme was to deliberately and methodically steal victims' purses and use the stolen credit cards to make fraudulent purchases.

The manner and means by which the defendants carried out this scheme reflected planning, coordination, and calculated exploitation of unsuspecting victims. The defendants worked in concert to identify, surveil, and target diners at restaurants in the District of Columbia. They stole victim's purses — containing wallets, credit cards, and personal identifying information — and then immediately used the stolen credit cards to make unauthorized purchases.

This conduct was not impulsive. It was systematic. The defendants purchased pre-paid gift cards using stolen credit cards and then used those fraudulently obtained gift cards to continue spending, thereby extending and concealing their criminal activity. This layered approach demonstrates sophistication and intent to maximize financial gain while minimizing detection.

<u>The April 12, 2025, Robbery</u>

On April 12, 2025, the defendants' preparation and coordination were captured on surveillance video from the exterior of Nando's, located at 836 F Street NW, Washington, D.C. At approximately 8:30 p.m., the defendants walked past the establishment and paused outside for several seconds while appearing to peer through the front window, conduct consistent with surveying the interior and identifying a suitable victim.



**Figure 1 - Bustamante Leiva (circled in red) and Montecino-Sanzana outside the Nando's on April 12, 2025.**

After this brief surveillance, Defendant Montecino-Sanzana entered the restaurant while his co-defendant removed his jacket and draped it over his left arm, conduct consistent with preparing to conceal stolen property. Acting in concert, the defendants then seized a purse belonging to H.G. and swiftly exited the restaurant with the victim's belongings. The purse contained personal effects and a credit card belonging to H.G., which the defendants subsequently used to make unauthorized purchases.



**Figure 2 – Bustamante Leiva and Montecino-Sanzana enter the Nando's at approximately 7:31 PM. Montecino-Sanzana appears to block the view of the back of H.G.'s chair while Bustamante Leiva grabs H.G.'s purse with his left hand hides it under his coat.**

Minutes after the robbery, the defendants acted in concert to further their fraudulent scheme by traveling together to the Safeway located at 490 L Street NW, Washington D.C. There, using a credit card stolen from H.G., Defendant Montecino-Sanzana executed an unauthorized purchase of a $500 Visa gift card, resulting in a $507.95 charge and a digital transmission in furtherance of the wire fraud offense. This was not an impulsive act, it was a calculated step designed to convert stolen credit into untraceable, reusable funds. After successfully completing the transaction, the defendants left the store together, having successfully transformed stolen financial information into portable currency.

The defendants did not stop there. Between April 12, 2025 and April 15, 2025, they used the fraudulently obtained Visa gift card to make approximately $462 in additional purchases. These transactions reflect a deliberate effort to extract maximum value from the stolen credit card while insulating themselves from detection. By converting the stolen card into a prepaid gift card and then spending down the balance, the defendants extended the fraud over multiple days and compounded the harm to the victim. Among these expenditures:

    a. On April 12, 2025, Defendant Bustamante Leiva and Defendant Montecino-Sanzana paid for a hotel stay at the Motel 6 located at 6711 Georgia Avenue NW, Washington, D.C.  This purchase was in the amount of $275.99.

    b. On April 14, 2025, Defendant Bustamante Leiva and Defendant Montecino-Sanzana paid for a hotel stay at the Quality Inn located at 7212 Richmond Highway, Alexandria, VA.  This purchase was in the amount of $243.94.

    c. On April 15, 2025, Defendant Bustamante Leiva and Defendant Montecino-Sanzana added value to a SmarTrip card at the King Street Metro station in Alexandria, VA.  These purchases were in the amounts of $10.00 and $6.00.

   d. On April 15, 2025, Defendant Bustamante Leiva and Defendant Montecino-Sanzana made at least one purchase at the 7-Eleven located at 3100 Lockheed Boulevard, Alexandria, VA. This purchase was in the amount of $0.07.

The nature of this conduct underscores the need for a sentence that reflects the seriousness of the crime, promotes respect for the law, and deters similarly predatory conduct.

## II. Procedural History

On May 15, 2025, a grand jury returned an indictment charging Defendant Montecino-Sanzana with one count of Wire Fraud in violation of 18 U.S.C. § 1343, one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A, and one count of Robbery in violation 22 D.C. Code § 2801. On November 21, 2025, Defendant Montecino-Sanzana pled guilty to one count of Wire Fraud in violation of 18 U.S.C. §§ 1343, 2 and one count of Attempted Robbery in violation of 22 D.C. Code §§ 2810, 2802.

## III. The Pre-Sentence Investigation Report

The Pre-Sentence Investigation Report (PSIR) in this matter summarizes Defendant Montecino-Sanzana's personal background and criminal history. Defendant Montecino-Sanzana is 52 years old and was born in Santiago, Chile. PSIR at ¶ 45. Defendant Montecino-Sanzana grew up in a middle-class neighborhood in Chile where he lived until he was 19 years old, at which point he moved to Europe and traveled for two years. PSIR at ¶ 48. Defendant Montecino-Sanzana returned to Chile when he was 21 and began studying mechanics. PSIR at ¶ 49. At age 25, Defendant Montecino-Sanzana returned to Europe where he worked as a shipping container loader/unloader at a port in Rome, Italy. PSIR at ¶ 49. Defendant Montecino-Sanzana continued to work at various European ports for the next 15 years. PSIR at ¶ 50. At age 40, Defendant

Montecino-Sanzana returned to Santiago Chile where he built a small company with his brother-in-law that provided heavy machinery and earth moving services to mining companies, until the company became inactive in 2019. PSIR at ¶ 52.

After remaining in Chile for six years, Defendant Montecino-Sanzana traveled to the United States. PSIR at ¶ 53. Defendant Montecino-Sanzana returned to Chile in January 2021. PSIR at ¶ 53. Immigration and Customs Enforcement Records indicate that a final order of removal was issued for Defendant Montecino-Sanzana on January 1, 2021. PSIR at ¶ 53, n.2. Defendant Montecino-Sanzana returned to the United States later in 2021, reportedly working short-term demolition and construction jobs across the country prior to his arrest in this case. PSIR at ¶ 54.

Defendant Montecino-Sanzana's only criminal conviction dates back to January 1, 1998, when he was convicted of Fraud, Theft, and Forgery of Public Documents in Chile. PSIR at ¶ 35. Defendant Montecino-Sanzana currently has two cases pending against him for which he has active warrants: one in the United States and one in Chile. On April 27, 2025, law enforcement officers in Miami Beach, Florida, stopped the Defendant because he matched the description of a wanted fugitive. After he was stopped, Defendant Montecino-Sanzana provided law enforcement with a California identification card that was determined to be fictious. PSIR at ¶ 40. He was subsequently charged with Possession of Stolen/Fictious Driver's License. PSIR at ¶ 40. An Alias Capius Warrant was issued for Defendant Montecino-Sanzana on June 13, 2025. PSIR at § 40.

Defendant Montecino-Sanzana also has an open arrest warrant in Chile for the offense of Misappropriation, that was issued on August 3, 2019. PSIR at ¶ 41.

## ARGUMENT

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>         (i) issued by the Sentencing Commission . . .; and
>         (ii) that, . . . are in effect on the date the defendant is

>sentenced; . . .
>
>(5) any pertinent policy statement –
>    (A) issued by the Sentencing Commission . . . and
>    (B) that, . . . is in effect on the date the defendant is sentenced.
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## THE APPLICABLE SENTENCING GUIDELINES

The PSIR estimates Defendant Montecino-Sanzana's offense level on Count 1 (Wire Fraud) to be 5 and his criminal history to be category I, yielding a Guidelines sentencing range of 0 to 6 months' imprisonment. PSIR at ¶ 83. Additionally, the PSIR reflects a Guidelines range of a term of not more than 3 years of supervised release on Count 1. PSIR at ¶ 88. The PSIR estimates the Defendant's sentencing range on Count 2 (Attempt Robbery) to be 6 to 24 months. PSIR at ¶ 99. The PSIR notes that the D.C. Sentencing Guidelines do not provide a requirement regarding the imposition of a supervised release term on Count 2. PSIR at ¶ 94. The Government agrees with these guideline calculations.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government recommends that the Court sentence Mr. Montecino-Sanzana to a total of 24 months of imprisonment to be followed by 3 years of supervised release. Specifically, the Government is seeking a sentence of 6 months imprisonment on Count 1 and 24 months of imprisonment on Count 2, with those sentences to run concurrently to one another. This sentence — at the top end of the applicable guidelines range for Counts 1 and 2 — reflects the nature of the offenses to which the defendant has pled guilty, Defendant Montecino-Sanzana's comparatively limited criminal history, and provides deterrence to others in the community who might consider committing similar crimes.

I.     **The Nature and Circumstances of the Defendant's Offenses.**

Defendant Montecino-Sanzana pled guilty to one count of Wire Fraud and one Count of Attempted Robbery for the offense he committed, with his co-defendant, on April 12, 2025.

Defendant Montecino-Sanzana and his co-defendant targeted an unsuspecting diner at a restaurant in the District of Columbia, entering a restaurant where families were eating together,

deliberately positioning himself in close proximity to victim, while his co-defendant seized the victim's purse, before both defendants exploited the victims' credit-card for personal gain.

Although this offense did not involve physical violence it occurred in a crowded public restaurant, the kind of space where families gather and members of the community reasonably expect safety. By preying on individuals in this environment, Defendant Montecino-Sanzana, undermined that sense of security. Such crimes strike at the core of public trust and communal safety. The victim was not a corporation or a faceless entity; the victim was an individual dining with friends, carrying personal effects and forms of personal identification in their purse.

Equally troubling is the calculated nature of this offense. The theft was followed almost immediately by fraudulent financial transactions designed to convert stolen credit into prepaid, transferable funds. This conduct reflects preparation and profit-driven motive — not impulsivity.

The D.C. Council has subjected individuals who attempt to commit robberies to a 3-year statutory maximum for violations of 22 D.C. Code § 2802. And Congress has indicated that convictions for Wire Fraud should be treated seriously given the maximum sentence for violations of 18 U.S.C. § 1343 is 20 years. These statutory frameworks reflect legislative judgment that repeated financial exploitation of victims — particularly through sophisticated or coordinated conduct — demands meaningful punishment.

In sum, Defendant Montecino-Sanzana's conduct was calculated and predatory. The nature and circumstances of these offenses fully support the Government's requested sentence of a period of imprisonment.

## II.     **The History and Characteristics of the Defendant.**

Defendant Montecino-Sanzana's criminal history is comparatively quite limited compared to his co-defendant. However, the Defendant's criminal history is nonetheless troubling. Rather, it reflects the continuation of a longstanding course of property crimes.

Defendant Montecino-Sanzana has one criminal conviction dating back to January 1, 1998, when he was convicted in Chile of Fraud, Theft, and Forgery of Public documents. However, the Defendant was arrested in Chile for robbery in 1991, fraudulent use of bank checks in 1995, and fraud in 2006. And he has an outstanding warrant for misappropriation, dated August 30, 2019, that was issued by a court in Santiago, Chile. This arrest warrant was issued after Defendant Montecino-Sanzana failed to return to mini loaders that he had leased on October 17, 2018, and January 1, 2019, through his company.

Defendant Montecino-Sanzana's background makes his criminal conduct all the more concerning. The Defendant grew up in a middle-class neighborhood in Chile, had the opportunity to attend university before traveling to Europe, and studied mechanics upon his return to Chile. And while living in Chile, Defendant Montecino-Sanzana built a small company with his brother-in-law.

Despite his prior conviction, his history of arrests, and his background, Defendant Montecino-Sanzana still worked in concert with his co-defendant to steal H.G.'s purse and make fraudulent use of her credit card. Accordingly, the Defendant's history and characteristics weigh in favor of the Government's requested sentence. A meaningful term of incarceration is necessary

to reflect his recidivism, promote respect for the law, and protect the public from further theft-related conduct.

### III. The Need for the Sentence Imposed.

The Government's requested sentence of imprisonment is sufficient, but no greater than necessary to satisfy the purposes of sentencing.

First, the sentence provides specific deterrence. Defendant Montecino-Sanzana has demonstrated that a prior conviction and multiple arrests have not deterred him from reoffending. The instant offense reflects as much. A meaningful custodial sentence is necessary to incapacitate the defendant and protect the public from further theft-related conduct.

Second, the requested sentence provides general deterrence. Wire fraud and theft offenses committed in public spaces undermine community safety and erode public trust. The Court's sentence should send a clear message that repeated, calculated exploitation of unsuspecting victims will result in meaningful consequences.

Third, although Defendant Montecino-Sanzana technically qualifies as a zero-point offender under U.S.S.G. § 4C1.1(a)(1) because he does not have any criminal convictions in the United States, his criminal history score understates the seriousness of his criminal conduct.[1] His foreign conviction —involving similar theft-related behavior — is not reflected in his criminal history category. Thus, even though a sentence of probation would be a guidelines compliant

---

[1] Although the 2025 U.S. Sentencing Guidelines deleted section 4A1.3 – Departures Based on Inadequacy of Criminal History Category, the 2024 U.S. Sentencing Guidelines explained that prior sentences not used in computing a defendants criminal history category, such as sentences for foreign convictions, could constitute a based for an upward departure. *See* U.S.S.G. §§ 4A1.3(a)(1), (2)(A).

sentence, it would fail to meaningfully hold him accountable for his criminal conduct and would inadequately protect the public.

Accordingly, the requested sentence of 24 months of imprisonment, followed by three years of supervised release is a reasonable one.

### IV. Restitution

With respect to restitution, Wire Fraud is an "offense against property under" Title 18, and thus falls under the Mandatory Victim Restitution Act. 18 U.S.C. § 3663A. Therefore, the Court must order that "the defendant make restitution to the victim of the offense[s]." 18 U.S.C. § 3663(a)(1). In this case, Defendant Montecino-Sanzana has admitted, as part of the statement of offense in support of his guilty plea, that he made an unauthorized purchase in the following amount: (1) $507.95 using a credit card stolen from H.G. The Government will provide the relevant contact information to facilitate restitution payments through the Clerk's Office. The Government respectfully requests that the Court order Defendant Montecino-Sanzana to pay restitution to H.G. in the amount listed above.

### CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 24 months of imprisonment. Specifically, a sentence of 6 months' incarceration on Count 1 to be imposed concurrently to a sentence of 24 months incarceration on Count 2 for a total of 24 months of imprisonment, followed by three years of supervised release.

         Respectfully submitted,

         JEANINE FERRIS PIRRO
         United States Attorney

By:    */s/ Benjamin Helfand*
         Benjamin Helfand
         D.C. Bar No. 1658708
         Assistant United States Attorney
         601 D Street NW
         Washington, D.C. 20530
         202-252-7059
         Benjamin.Helfand@usdoj.gov